The opinion of the court was delivered by
Watkins, J.
The Nicholas Burke Company, Limited, sued out an •attachment against the property of Oscar Angelloz in the parish of Lafourche, where the latter resided and was engaged in business as -a merchant, and immediately afterward — on the 10th of December, *867 1889 — it caused an alias writ of attachment to be sent to the parish •of St. Mary, and a seizure thereunder to be made of a stock of goods and merchandise in Morgan City, which was under the management of Pierre Angelloz — father of Oscar — as agent up to a date shortly •antecedent to the seizure.
The plaintiff claims to have purchased this stock of goods from ‘Oscar Angelloz, and to have been in the actual possession thereof, accompanied with all the indicia of ownership, anterior to and at the time of the seizure.
The object of this suit is to restrain the sale of these goods by injunction predicated on the plaintiff’s claim of ownership, and he accompanies his claim with a demand for $5000 as damages.
The defence of the attaching creditor company is that plaintiff’s title to the goods is fictitious, fraudulent and simulated, and the result of a fraudulent combination between him and its debtor to defeat recourse upon his property.
The case was tried by a jury, and a verdict and judgment were rendered for the defendant, rejecting plaintiff’s demands and dissolving his injunction; and the latter has appealed.
The facts disclosed by the record appear to be as follows, viz:
Oscar Angelloz, the debtor, resided in the parish of Lafourche, •and was there engaged in business as a merchant, and he also owned ■a small stock of merchandise which was operated and controlled by his father, Pierre Angelloz, in Morgan City, parish of St. Mary. The plaintiff claims to have bought his stock of goods from Pierre, as •agent of Oscar Angelloz, on the 5th day of December, 1889, prior to the seizure thereof on the 10th of that month. The sale was evidenced by a formal authentic act, and it was duly recorded in the conveyance office. The price stated in the act is “ $800 cash in hand paid,” and the property is described as “ the entire contents, good will, trade and custom of that certain grocery store carried on by the vendor, Angelloz, in Morgan City,” etc.
At the time of this alleged sale the plaintiff was engaged in business in Morgan City as a baker. He was placed in possession of the keys of the building, which was occupied as a store, and retained Pierre Angelloz as his clerk at a salary of $50 per month.
When the sheriff demanded a seizure, the plaintiff notified him of his ownership, exhibited to him his act of sale, and demanded a bond •of indemnity. The seizure was then effected, an inventory and *868 appraisement were made, and the sheriff gave the plaintiff a receipt for the keys of the store.
In 1884 the plaintiff made a cession of his property to his creditors, subsequently obtained a discharge from his debts, and in 1885 he recommenced business as a baker, and at the time of his alleged purchase he had accumulated a small stock by dint of industry and the husbanding of his small earnings, which he valued at $1500. But he has failed to explain the source from which he derived the money with which to purchase the goods, or from which he expected to^ derive the same. He does not claim to have paid the cash, as stated in the act of sale, or to have had that sum of money in possession, or any other resources adequate to make the purchase.
Prior to the date of his purchase plaintiff had nothing more than a casual knowledge of the kind or amount of business Angelloz was doing; nor whether it was profitable or not; nor what was the amount of his daily sales.
As a witness, he was unable to state, even in a general way, the character of the stock Angelloz was carrying at the time of purchase, nor the amount or quality of any particular kind of goods that were in stock. At the time of sale no account of stock was taken. He did not even call upon Angelloz to exhibit to him his bills of purchase or invoices, or to state when the goods were purchased. He admits that he had never been engaged in the grocery business, and that he had no idea of the value of a plow, a pot, a chamber set, or a. looking-glass. Prior to his alleged purchase plaintiff did not even make a personal examination of the goods in order to possess himself of accurate information as to their value. He admits that he was at the store at 8 o’clock in the morning to deliver bread as. usual, and that nothing was said about a sale. That in the evening about 7 o’clock Angelloz mentioned it to him.
In order to give an accurate description of the circumstances surrounding the alleged contract, we have chosen to reproduce a part, of the plaintiff’s cross-examination, viz:
Q. “ Oscar Angelloz was the owner of those goods, wasn’t he?
A. “ I believe he was.
Q,. “ Who sold you those goods?
A. “ His agent, Pierre Angelloz.
Q,. “ Did you at the time this sale was passed see the power of attorney from Oscar Angelloz to Pierre Angelloz?
*869 A. “ No, sir; I did not ask for it.
Q. “ You were buying this stock of goods from an agent, and didn’t ask him to let you see the power of attorney ?
A. “ Yes, sir: I do that every day.
Q. “ Did you ever see the power of attorney ?
A. “No, sir.
Q,. ‘ ‘ Who fixed the price — you or Angelloz ?
A. “I did.
Q. “ How long did it take you to close the bargain ?
A. “ About two minutes.
Q. “Were you inside the store or outside ?
A. “ Inside.
Q. “ Was there much difficulty or trouble in arriving at the terms?
A. “ No, sir; it was done in two minutes.”
Between the hours of 7 and 8 o’clock the parties went before the notary and passsed the act of sale.
It appears that the creditor of Oscar Angelloz made affidavit and filed the suit on the 4th of December, 1889, in Lafourche, and on the following day the order of attachment was granted, and the seizure therein made.
Contemporaneously therewith the sale of the debtor’s property in Morgan City was made, under the circumstances and after the manner just detailed.
During the interim between that date and the seizure complained of, on the 10th of that month, news of Angelloz’s sale to Lahite was industriously circulated in Morgan City, and most of the business people made acquainted with it.
It is a mooted question, the truth of which is asserted by one party and denied by the other, that Oscar Angelloz telegraphed his father, Pierre, the fact that an attachment had been levied upon his property in Lafourche, and on the day it was made. Our conclusion is, that such information was conveyed and acted upon; and that it exercised an influence over the conduct and actions of the parties, and m planning, devising and consummating this sale for the sole purpose of defeating a seizure under the attachment. Thata sale, as made, should have been consummated so hurriedly is unreasonable, on any other hypothesis. It is quite impossible — and equally unnecessary— to recapitulate any more of the details of the evidence in support of the opinion we entertain without making it too prolix. It will *870 suffice to say that the sale was both simulated and fraudulent, and. conveyed no title to the plaintiff which the creditors of Angelloz were bound to respect. Manifestly plaintiff parted with no value. Since the passage of Act 46 of 1886, amending Oode of Practice, 398, the seizing creditor may, in answer to a third opposition, alleging ownership of personal property seized, “allege and prove the title fraudulent, and the court shall try and decide the issue thus made.” A revocatory action is not necessary in such case.